IN THE UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No.  3:08-cv-03160-JES-CHE |
| | ) | |
| RANDAL J. PETERSON and | ) | |
| VALERA L. PETERSON, | ) | |
| | ) | |
| Defendants. | ) | |

<u>UNITED STATES' MOTION FOR SUMMARY JUDGMENT</u>

The plaintiff, the United States of America, by its undersigned counsel, Douglas W. Snoeyenbos, pursuant to Fed. Rule Civ. Pro. 56 and Local Rule 7.1(D), requests judgment as a matter of law that the defendants are indebted to the United States for an erroneous income tax refund for the year 2002 in the amount of $199,411.87, plus interest and other statutory additions accruing from and after July 14, 2006, as allowed under the Internal Revenue Code, and in support of this motion, states as follows:

INTRODUCTION

The United States' Complaint sought judgment against the defendants based on refunds of income taxes for the years 1997 and 2002.  The complaint alleged that those refunds were erroneous.  See 26 U.S.C. § 7405.  The refund for the year 1997 was in the amount of $148,765.00, and the refund for the year 2002 was in the amount of $334,979.21.  The United States no longer seeks a judgment that the defendants are liable for any portion of the refund for 1997, in light of the applicable statute of limitations.  With respect to the refund for 2002, the defendants agree with the United States that $50,646.87 of the refund was erroneous, but it is the United States' position, and this motion will show, that an additional $148,765.00 of that refund was erroneous, for a total of $199,411.87.

Peterson\MSJ.Motion

This amount is equal to the sum of the amount that defendants admit was erroneous ($50,646.87) and the amount of the 1997 refund ($148,765.00)

The refund for the year 1997 cleared the Federal Reserve on July 21, 2006. The refund for 2002 cleared the Federal Reserve four days later, on July 25, 2006. Both refunds were made in response to the defendants' claims, as set forth in amended returns, that they had incurred $1,219,206 of deductible losses for the year 2002.  In their amended returns, the defendants applied those claimed loss deductions first to offset all of their $828,716.00 of adjusted gross income for 2002, and carried back the remaining loss deductions (net operating loss) to offset a part of their adjusted gross income for the year 1997.  After discovery, the parties have agreed that the defendants actually incurred only $605,961.78 of deductible losses for the year 2002.  It follows that if all of those losses are applied as a deduction from 2002 income, then there were no net operating losses left over to carry back to 1997, and the $148,765 refund for that year was erroneous.  Although the recovery of the payment for 1997 is barred by the statute of limitations, the recovery of the 2002-year refund, to the extent erroneous, is not time-barred, because it was made four days later.

Although the parties agree that $50,646.87 of the refund for 2002 was erroneous, it is the United States' position, with which the taxpayers do not agree, that an additional $148,765.00 of the refund for 2002 was also erroneous.  At the time that the refund for 2002 was made, the United States had the right to offset or recoup an amount representing the refund for 1997 that had been erroneously made four days earlier.  As already noted, the refund for 1997 was erroneous because the defendants actually incurred only $605,961.78 of deductible losses, so that, after the application of all of those deductions to reduce income for 2002, there were no excess deductible losses left over to carry back to offset income for the year 1997.

Peterson\MSJ.Motion

The United States also maintains that because both refund checks in this case were issued in response to related claims based on a single set of overstated losses, all of which were incurred in 2002 (not 1997), this Court can also view the two refund checks as partial payments made in response to a single claim based on one set of losses incurred in a single tax year, and so allow the United States to recover the erroneous portion of those partial payments from the one partial payment that under the statute of limitations can still be recovered.

The United States therefore requests judgment as a matter of law that the defendants are liable for the erroneous portion of the income tax refund for the year 2002 that was sent to them on July 14, 2006, in the amount of $199,411.87, plus interest to the extent allowed by, and at the rates set forth in, the Internal Revenue Code.

## UNDISPUTED MATERIAL FACTS

The plaintiff, the United States of America, by its undersigned counsel, pursuant to Local Rule 7.1(D)(1)(b), submits its list of Undisputed Material Facts as to which it contends there is no genuine issue, as follows:

1. The federal income tax return that was filed by Randal J. Peterson and Valera L. Peterson ("the Petersons") for the year 1997 reported adjusted gross income of $785,823, and a total tax liability of $297,090.  That liability was satisfied by estimated tax payments.   (paragraph 1, Stipulation of Facts, filed on April 20, 2010 (Docket No. 12) (hereinafter referred to as "Stipulation of Facts"))

2. The Petersons filed their 2002 federal income tax return on April 15, 2003, reporting adjusting gross income of $828,716 and a total tax liability of $320,342. That liability was satisfied through a combination of withholding and estimated tax payments.  (paragraph 2, Stipulation of Facts)

Peterson\MSJ.Motion

3. On April 8, 2006, the Petersons filed an amended income tax return for the year 2002.  That amended return claimed a refund of tax in the amount of $281,559, based on a net decrease in income in the total amount of $1,219,206 (resulting in negative gross income of $390,490).  That amended return included the following statement:

> This return is intended to claim as an ordinary business loss all monies expended by the taxpayer in capital contributions, legal fees, loan guarantees and other expenditures.  The taxpayer acknowledges that some of these expenses may be in the nature of a capital loss, but given the lack of reporting from the pass-thru entities, has elected to protect his interests by asserting the maximum claim in the absence of complete facts.

(paragraph 3, Stipulation of Facts)

4. Also on April 8, 2006, the Petersons filed an amended income tax return for 1997.  That amended return claimed a refund of tax in the amount of $148,765, based on the carryback of a net operating loss from 2002 in the amount of $364,728. (paragraph 4, Stipulation of Facts)

5. The Internal Revenue Service issued checks to the Petersons dated July 14, 2006, for income tax refunds for the years 1997 and 2002.  The refund check for the year 1997 was in the amount of $148,765, representing principal tax only.  The refund check for the year 2002 was in the total amount of $334,979.21, representing tax of $281,559 and interest of $53,420.21. (paragraph 5, Stipulation of Facts)

6. The income tax refund check that was sent to the Petersons for the year 1997, in the amount of $148,765, cleared the Federal Reserve on July 21, 2006.  The income tax refund check that was sent to the Petersons for the year 2002, in the amount of $334,979.21, cleared the Federal Reserve on July 25, 2006. (paragraph 6, Stipulation of Facts)

7. The United States filed its Complaint in this action on July 25, 2008. (paragraph 7, Stipulation of Facts; judicial notice)

Peterson\MSJ.Motion

8. The Petersons actually incurred ordinary business losses for the year 2002 in the total amount of $605,961.78.  (paragraph 8, Stipulation of Facts)

9. If the entire $605,961.78 in ordinary business losses that were actually incurred by the Petersons in 2002 were applied as deductions from their income for that year, then the Petersons' total corrected income tax liability for 2002 would be $81,355, and they would have overpaid their 2002 income tax liability by $238,987 as of April 15, 2003, and $50,646.87 of the refund that was sent to them for the year 2002 was erroneous.  (paragraph 10, Stipulation of Facts)

ARGUMENT

In an erroneous refund suit the government must show (1) that a refund was paid to the taxpayers, (2) the amount of the refund, (3) that the government's recovery action was timely, and (4) that the taxpayers were not entitled to the refund which the government seeks to recover. *See United States v. Philadelphia Marine Trade Association*, 471 F. Supp. 2d 518, 524 (E.D. Pa. 2007); *Johnson v. United States*, 228 F. Supp. 2d 1218, 1221 (D. Colo. 2002), citing *United States v. Daum*, 968 F. Supp. 1037 (W.D. Pa. 1997); *see also United States v. Macphail*, 149 Fed. Appx. 449, * 4 (6th Cir. 2005) ("the Government must show that the money was erroneously paid"); *United States v. Commercial National Bank of Peoria*, 874 F. 2d 1165, 1169 (7th Cir. 1989).

The parties have stipulated that a refund was paid to the taxpayers by check dated July 14, 2006, in the amount of $334,979.21.  Therefore, the first two requirements of a suit to recover an erroneous refund for the year 2002 are met.

Absent fraud or misrepresentation, which the United States is not alleging here, the statutory period for the United States to file an erroneous refund suit is two years "after the making of such refund."  See 26 U.S.C. § 6532(b).  That two-year period is measured from the date that the refund check clears the Federal

5

Peterson\MSJ.Motion

Reserve and payment is authorized by the Treasury.  See *United States v. Commonwealth Energy*, 235 F. 3d 11 (1st Cir. 2000); *United States v. Greene-Thapedi*, 398 F. 3d 635 (7th Cir. 2005).  The Petersons' income tax refund check for 2002, in the amount of $334,979.21, cleared the Federal Reserve on July 25, 2006. The United States' Complaint in this action was filed exactly two years later, on July 25, 2008.  Therefore, the United States' claim that a portion of that refund for the year 2002 was erroneous is timely.

The remaining requirement in an erroneous refund suit is that the taxpayers were not entitled to the refund which the government seeks to recover.  The United States contends that the taxpayers were not entitled to two separate portions of the total refund that was sent to them.  First, the United States contends that $50,646.87 of the refund was erroneous because only $605,961.78 of the $1,219,206 in deductible losses that were claimed on the amended return for 2002 were actually incurred.  If deductible losses of $605,961.78 were applied to reduce the Petersons' $828,716 of adjusted gross income for 2002, their tax liability would have been $81,355, and $50,646.87 of the refund was erroneous. (See paragraphs 2 and 10, Stipulation of Facts.)  The defendants take the position that judgment should be entered in favor of the United States in that amount only.

Second, the United States contends that the taxpayers were not entitled to an additional $148,765.00 of the refund that was made to them for the year 2002. On the date that the refund for 2002 was made, July 25, 2006 (*i.e.*, when the check cleared the Federal Reserve), the United States had the right, pursuant to 26 U.S.C. § 6402, to offset that amount, which represented the refund that four days earlier had been erroneously made to the defendants for the year 1997, against the amount that the taxpayers were owed for the year 2002.  The taxpayers were not entitled to that $148,765, because they had only actually incurred $605,961.78 in

deductible losses for 2002, all of which were applied against their 2002 income, leaving no losses left over to be carried back to apply against and reduce their 1997 income and so generate the right to a refund.

The Internal Revenue Code, at 26 U.S.C. § 6402(a), provides that "in the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment . . . against any liability in respect of an internal revenue tax on the part of the person who made the overpayment." In this case, the "overpayment" was the overpayment of income taxes for 2002 which the taxpayers were owed as of July 25, 2006. The "liability in respect of an internal revenue tax" was the liability owed by the taxpayers to the United States for the erroneous refund for 1997. The "applicable period of limitations" was the statutory period for filing an erroneous refund suit, two years under 26 U.S.C. §6532(b). An offset by the Internal Revenue Service on July 25, 2006, would have been well within that two-year statutory period of limitations because it had only begun to run four days earlier, on July 21, 2006, when the erroneous refund for 1997 was made.

Moreover, regardless of when the period of limitations for an erroneous refund suit for the $148,765.00 check for the 1997 year might have expired, if the defendants had claimed a refund of 2002 income tax, the Internal Revenue Service could have reduced the amount that it paid on that claim at any time under the doctrine of common-law recoupment, because of the interrelated nature of the two nominally separate claims. Recoupment is a category of setoff in which two opposing rights of payment arise from the same occurrence or transaction, or are otherwise interrelated. *Reiter v. Cooper*, 507 U.S. 258 (1993). Because of the interrelationship of the two opposing rights of payment, recoupment rights are particularly inviolate. For example, a right to recoupment survives the expiration

7

of a statute of limitations.  *Id.* at 263-64.  *See also Bull v. United States*, 295 U.S. 247, 262 (1935).  In addition, recoupment rights allow opposing claims to be offset across the petition date in bankruptcy – *i.e.*, a postpetition claim may be offset against a prepetition obligation, or a prepetition claim may be offset against a postpetition obligation, so long as the two rights of payment are interrelated.  *See also In re Holyoke Nursing Home, Inc.*, 372 F.3d 1 (1st Cir. 2004) (recoupment offsets not subject to avoidance as preferences under 11 U.S.C. § 553).

Although it did not use the word "recoupment," the Seventh Circuit has recognized that offsets of tax overpayments and underpayments that are attributable to the adjustment of a common set of deductible losses through carrybacks and carryovers are not subject to the statutory limitations periods applicable to other types of setoffs.  *Pettibone Corp. v. United States*, 34 F.3d 536, 539 (7th Cir. 1994).  In *Pettibone*, the Seventh Circuit held that the interrelated nature of tax overpayments and underpayments that stemmed from carrybacks and carryovers took the case out of the usual rule that a creditor may not satisfy a prepetition claim against a bankrupt debtor by offsetting postpetition obligations owed to the debtor against that prepetition claim.  In *Pettibone*, the court held that postpetition tax refunds could be offset against prepetition tax refunds, even though normally doing so would constitute an impermissible preference that would violate the mutuality requirement of 11 U.S.C. § 553.

In fact, the Seventh Circuit's analysis in *Pettibone* demonstrates that the two refund checks involved in this case should each be viewed as partial payments against a single claim based on losses incurred during a single year, 2002.  As *Pettibone* explained, "[l]oss carrybacks exemplify the interdependence among periods within the corporate taxation system and show that from both economic and legal standpoints the nominal one-year accounting period for taxes is deceiving."  35

Peterson\MSJ.Motion

F.2d at 539.  In *Pettibone*, the appellate panel described the district court's decision in favor of the United States as having "characterized the netting of tax overpayments against tax underpayments as 'an accounting method' and 'not the type of setoff or offset contemplated by the Bankruptcy Code.'"  The appellate panel stated unambiguously "[w]e agree with this conclusion."  *Id.* (quoting in part from the district court's opinion, 161 B.R. 960; internal sub-quotation marks omitted).

Precisely the same concerns that the Seventh Circuit found to be dispositive in *Pettibone* also apply here, because, when the amount of deductible losses that were actually incurred by the defendants for the tax year 2002 was eventually determined, the defendants were entitled to a total refund in the amount of only $284,332.34.  When the defendants cashed the 2002-year refund check in the amount of $334,979.21 (of which they are only willing to give back $50,646.87), they had already received the proceeds of the $148,765.00 check that had cleared the Federal Reserve four days earlier, which was based on the same exact set of losses incurred during 2002.  Under the teaching of *Pettibone*, it matters not which particular negotiable instrument (check) was technically erroneous in its entirety, and which was technically only partly erroneous, based on associating one check with one year and the other check with the other.  The two checks together were each only partial payments made on a single substantive claim based on a single set of loss transactions.  To the extent that the plaintiff received too much money from its now-admittedly excessive claim of deductible losses incurred during 2002, which led the Internal Revenue Service to issue both checks, the United States should be able to recover the full amount of its claim from the $334,979.21 check that was formally associated with the year 2002.  After all, if defendants had only received the first check for $148,765.00, and nothing more, and then sued the government for an additional amount that was also based on the same set of deductible losses

9                                    Peterson\MSJ.Motion

that were incurred during the year 2002, the defendants would only be entitled to receive a refund of an additional $135,568 based on those losses.  Once the defendants received the 1997-year check, they were similarly not entitled to an additional $284,332.34, but rather were only entitled to an additional $135,567.34. Any amount that they received in excess of that amount ($334,979.21 minus $135,567.34, or $199,411.87), was an erroneous refund, for which judgment should be entered against them.

WHEREFORE, the plaintiff, the United States of America, requests judgment as a matter of law that the defendants are liable for an erroneous refund that was sent to them on July 14, 2006, in the amount of $199,411.87, plus interest to the extent allowed by, and at the rates set forth in, the Internal Revenue Code.

RODGER A. HEATON
United States Attorney

*/s/ Douglas W. Snoeyenbos*
DOUGLAS W. SNOEYENBOS
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55, Ben Franklin Station
Washington, D.C.  20044
Telephone:  (202) 307-6558
E-mail: douglas.w.snoeyenbos@usdoj.gov

Peterson\MSJ.Motion

<u>CERTIFICATE OF SERVICE</u>

IT IS HEREBY CERTIFIED that service of the foregoing UNITED STATES'

MOTION FOR SUMMARY JUDGMENT has this 30th day of April, 2010, been

made upon the following by electronic filing and the Court's electronic notification

system:

> THOMAS H. WILSON
> 607 East Adams Street
> Suite 800
> P.O. Box 5131
> Springfield, Illinois 62705

> */s/ Douglas W. Snoeyenbos*
> DOUGLAS W. SNOEYENBOS
> Trial Attorney, Tax Division
> U.S. Department of Justice
> P.O. Box 55, Ben Franklin Station
> Washington, D.C. 20044
> Telephone: (202) 307-6558

Peterson\MSJ.Motion