E-FILED
Wednesday, 08 September, 2010 10:48:49 AM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

UNITED STATES OF AMERICA, )
)
Plaintiff, )
)
v. ) No. 08-3160
)
RANDAL J. PETERSON and )
VALERA L. PETERSON, )
)
Defendants. )

**OPINION**

This matter comes before the Court on Plaintiff United States' Motion for Summary Judgment (d/e 13) (Government Motion) and Defendants Randal J. Peterson and Valera L. Peterson's Motion for Summary Judgment (d/e 14) (Peterson Motion). The Government brought this action to recover erroneously paid refunds from the Petersons' 1997 and 2002 joint income tax returns, pursuant to 26 U.S.C. § 7405. For the reasons set forth below, the Motions are allowed in part and denied in part.

STATEMENT OF FACTS

The Petersons are married and filed joint income tax returns in 1997 and 2002. The Petersons reported in their 1997 tax return that they had

an adjusted gross income of $785,823.00 and a total tax liability of $297,090.00. The Petersons paid this tax liability with estimated tax payments. The Petersons reported in their 2002 tax return that they had an adjusted gross income of $828,716.00 and a total tax liability of $320,342.00. They paid this tax liability with a combination of withholding and estimated tax payments. Stipulation of Facts (d/e 12), ¶¶ 1, 2.

On April 8, 2006, the Petersons filed amended tax returns for 2002 and 1997. The 2002 amended return claimed a net decrease in income of $1,219,206.00 resulting in a negative gross income of $390,490.00. The Petersons made the following statement in the return:

> This return is intended to claim as an ordinary business loss all monies expended by the taxpayer in capital contributions, legal fees, loan guarantees and other expenditures. The taxpayer acknowledges that some of these expenses may be in the nature of a capital loss, but given the lack of reporting from the pass-thru entities, has elected to protect his interests by asserting the maximum claim in the absence of complete facts.

Id. ¶ 3. The Petersons claimed a refund of $281,559.00. The Petersons' 1997 amended return claimed a refund of tax in the amount of $148,765.00 based on the carry back of the net operating loss from 2002 in the amount of $364,728.00. Id. ¶ 3, 4.

The Internal Revenue Service (IRS) issued checks on July 17, 2006, to the Petersons for income tax refunds for 1997 and 2002. The checks were dated July 14, 2006. The 1997 refund check was for $148,765.00, representing tax principal only. The 2002 refund check was for $334,979.21, representing $281,559.00 in tax and $53,420.21 in interest. The Petersons negotiated both checks. The 1997 refund check cleared the Federal Reserve on July 21, 2006. The 2002 refund check cleared the Federal Reserve on July 25, 2006. The Government filed this action on July 25, 2008. Id. ¶ 5-7, 10.

The Petersons actually incurred ordinary business losses of $605,961.78 in 2002, rather than $1,219,206.00. If the $605,961.78 was applied as deductions to the Petersons' 2002 income tax liability, then the Petersons' corrected income tax liability for 2002 would be $81,355.00. Interest on the overpayment from April 15, 2003, to July 17, 2006, would be $45,345.34. Under this computation, $50,646.87 of the 2002 refund was erroneous. Id. ¶¶ 8, 10.

Under this computation, there was no excess loss to carry back to 1997 tax year. The parties, however, stipulate:

Shortly before this suit was filed, the two-year statutory period

> of limitations in 26 U.S.C. § 6532(b) expired with respect to the commencement of an action to recover, as an erroneous refund, the refund that was issued to the defendants for the year 1997. (This stipulation shall not be construed to waive the United States' contention that the erroneous refund for 1997 may be offest against the refund that was claimed by the Petersons for the year 2002, so that a portion of the 2002 refund that was made to the Peterson may be considered erroneous under the doctrine of recoupment and may be recovered for that reason.)

Id. ¶ 9. The Government further makes no claim that the Petersons committed any fraud in filing the amended returns in 2006 or claiming therein the refunds for 1997 and 2002. Complaint (d/e 1); United States' Motion for Summary Judgment (d/e 13), at 5.

ANALYSIS

Both parties move for summary judgment. At summary judgment, the moving party must present evidence that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The Court must consider the evidence presented in the light most favorable to the non-moving party. Any doubt as to the existence of a genuine issue for trial must be resolved against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once the movant has met its burden, the non-moving must present evidence to show that issues of fact remain with respect to an issue essential to its case, and

on which it will bear the burden of proof at trial. Celotex Corp, 477 U.S. at 322; Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

The Government filed this action to recover part of the 2002 refund and all of the 1997 refund. Complaint, at 2. The Internal Revenue Code (Code) authorizes the Government to recover an erroneous refund. 26 U.S.C. § 7405. The Government must bring a § 7405 action within two years of payment of the refund. 26 U.S.C. § 6532(b). The two-year statute starts to run when the refund check clears the Federal Reserve and is actually paid. O'Gilvie v. United States, 519 U.S. 79, 91 (1996). The 1997 refund check cleared on July 21, 2006, and the 2002 refund check cleared the Federal Reserve on July 25, 2006. The Government commenced this action on July 25, 2008. The Government concedes that the claim for the 1997 refund check is barred. The Petersons are, therefore, entitled to partial summary judgment for the Government's claim to recover the 1997 refund payment on July 21, 2006. The remaining issue is the amount of the 2002 refund check that may be recovered as erroneously paid.

To prevail on an erroneous refund suit, the Government must show: (1) that a refund was paid to the taxpayers, (2) the amount of the refund,

(3) the Government's action is timely, and (4) the taxpayers were not entitled to the refund which the Government seeks to recover. United States v. Commercial Nat. Bank of Peoria, 874 F.2d 1165, 1169 (7th Cir. 1989). The parties agree that the Government established the first three elements with respect to the 2002 refund. The issue is the amount of the 2002 refund that was erroneously paid.

The Government claims that it made two errors when it paid the 2002 refund: (1) the Government miscalculated the 2002 refund by $50,646.87; and (2) the Government erroneously failed to exercise its common law right of setoff or recoupment to retain $148,765.00 in satisfaction of its then existing claim against the Petersons to recover the erroneous 1997 refund. The Petersons concede the $50,646.87 is due and owing as an erroneous payment. The Government, therefore, is entitled to partial summary judgment on this portion of the claim of erroneous payment in the 2002 refund. The only issue is the Government's claim that the $148,765.00 was erroneously paid.

The Government first asserts that it could have kept the $148,765.00 on July 25, 2006, under the common law theory of setoff, but erroneously

failed to do so.[1] The Government may use common law remedies to recover money owed to it, including setoff. See e.g., United States v. Maxwell, 157 F.3d 1099, 1102 (7th Cir. 1998); United States v. Tafoya, 803 F.2d 140, 141-42 (5th Cir. 1986); Dunn & Black, P.S. v. United States, 492 F.3d 1084, 1093 n.10 (9th Cir. 2007). The common law right of setoff may be invoked when two parties owe each other mutual, mature, and liquidated debts. See e.g., In re Clark Retail Enterprises, Inc., 308 B.R. 869, 895 (Bankr.N.D.Ill. 2004); In re Allen-Main Associates, Ltd. Partnership, 233 B.R. 631, 635 (Bankr.D.Conn. 1999); Willett v. Lincolnshire Management, Inc., 302 A.D.2d 271, 756 N.Y.S.2d 9, 10 (N.Y.A.D. 1st Dept. 2003); Bank of Chicago-Garfield Ridge v. Park Nat. Bank, 237 Ill.App.3d 1085, 1091-92, 606 N.E.2d 72, 76 (Ill.App. 1st Dist. 1992); Rexius Forest By-Products, Inc. v. A&R Lumber Sales, Inc., 112 Or.App. 114, 117, 827 P.2d 1359,

---

[1]The Government agrees that its statutory right of setoff, pursuant to 26 U.S.C. § 6402, does not apply to this case. United States' Response in Opposition to Defendants' Motion for Summary Judgment (d/e 16), at 6-7. Section 6402 authorizes set-offs to satisfy outstanding tax liabilities. The Petersons, however, paid their tax liabilities in full. The refunds in this matter were rebate refunds, which means that the Petersons' formal tax liabilities were reduced by the amount of the refunds. See O'Bryant v. United States, 49 F.3d 340, 342 (7th Cir. 1995); 26 U.S.C. §§ 6211, 6201, 6204, 6212, & 6213. The refunds were erroneous so the Government could pursue a claim under § 7405 or some other available remedy; however, the liability was not a tax liability, so the Government could not pursue administrative remedies such as a § 6402 setoff. See O'Bryant, 49 F.3d at 346.

1361 (Or.App. 1992); Nutter v. Occidental Petroleum Land & Development Corp., 117 Ariz. 458, 460, 573 F.2d 532, 534 (Ariz. App. 1977).

In this case, issues of fact exist regarding whether the offsetting debts were mutual, mature and liquidated. At a minimum, it is unclear whether the debts were liquidated.[2] A debt is liquidated if the amount owed can be easily ascertained without intervention of the courts to determine. Bank of Chicago-Garfield Ridge, 606 N.E.2d at 76; Rexius Forest By-Products, Inc., 827 P.2d at 1361. The 1997 refund and the 2002 refund were both based on the Petersons' net operating loss deduction in the 2002 tax year. The Petersons did not know if the 2002 loss deduction was accurate because of the "lack of reporting from the pass-thru entities." Stipulation of Facts ¶ 3. The quoted statement indicates that the actual amount of the loss deduction could not have been readily ascertained when the Petersons filed

[2]There may also be an issue of fact regarding whether the offsetting debts were mature. The Federal Circuit has held that the Government must first send a notice and make demand before it can proceed with a § 7405 action to recover an erroneous refund. Stanley v. United States, 140 F.3d 1023, 1028 (Fed. Cir. 1998). If so, the Government's claim against the Petersons for the erroneous 1997 refund may not have been mature on July 25, 2006. The Court notes that the Code sections referenced by the Stanley court only require notice and demand to begin accruing interest on the erroneous refund, and only if the amount is less than $50,000.00. 26 U.S.C. §§ 6404(e)(2), 6532(b) & 7405.

the amended returns on April 8, 2006. If so, then the amount that each party actually owed the other was uncertain on July 25, 2006. On the other hand, the parties have stipulated that the Petersons' actual ordinary business losses were $605,961.78. Id. ¶ 8. When viewed favorably to the Government, this stipulation supports an inference that the amount of the Petersons' ordinary loss may be readily ascertainable now. If so, the amount may have been readily ascertainable on July 25, 2006. The paucity of information in the Stipulation of Facts about the basis for the calculation of the Petersons' losses makes it impossible for the Court to decide whether the Government had a right of setoff on July 25, 2006.

The Petersons argue that the Government could not assert a right of setoff because the erroneous 1997 refund was a rebate refund which reduced the assessment of taxes for 1997. The Petersons argue that the Government was limited on July 25, 2006, to two options for recovering an erroneous rebate refund: the Government could have issued a notice of deficiency and reassessed the tax erroneously refunded for the 1997 tax year, or commenced an action to recover an erroneous payment under § 7405. The Government did not issue a notice of deficiency and waited too long to file the § 7405 action.

The Petersons rely on Stanley to support their position. Stanley, 140 F.3d at 1027. In Stanley, the Government and Stanley were engaged in a long-running dispute over Stanley's 1982 income taxes. In 1989, Stanley paid the Government $538,276.17 for his 1982 taxes. On January 22, 1991, the Tax Court found that Stanley had a liability of $194,592.33 in taxes and $46,565.20 in penalties for his 1982 taxes, resulting in an overpayment by Stanley. On June 18, 1991, the Government reassessed taxpayer Stanley's 1982 taxes. The reassessment added interest to the Tax Court's findings. The reassessment stated that Stanley's liability for taxes totaled $515,877.94 in taxes, penalties and interest. Stanley, 140 F.3d at 1025.

In July 1991, the Government erroneously issued Stanley a refund on his 1982 taxes in the sum of $637,004.62. On September 9, 1991, the Government sent Stanley a reminder of unpaid tax. The reminder asked Stanley to pay $630,249.68 and warned that if payment was not received within ten days, additional interest and penalties would accrue. In response, Stanley sent the Government a cash bond in the sum of $630,249.68 to stop the running of interest and penalties. Id. at 1025-26. In 1994, Stanley demanded return of the bond. The IRS refused. Stanley then brought an

action to recover the bond.

The Government argued that it should be entitled to keep the bond as a virtual payment of the erroneous refund. The court rejected this argument because Stanley deposited the money with the IRS for the limited purpose of a bond to stop the running of interest. Stanley, 140 F.3d at 1028-29. Thus, in Stanley, the offsetting debts lacked mutuality. Mutuality means that the offsetting obligations are held by the same parties in the same capacity. In re Doctors Hosp. of Hyde Park, Inc., 337 F.3d 951, 955 (7th Cir. 2003). In Stanley, the Government was obligated to Stanley as a bondholder rather than a debtor in a normal debtor/creditor relationship. The Stanley court acknowledged that if the funds had not been held in this limited capacity, the Government may have been entitled to keep the funds. Stanley, at 1029. Thus, the Stanley decision does not preclude the right of the Government to exercise the common law remedy of setoff.

The Petersons also rely on a series of cases that address whether the Government can treat erroneous refunds as unpaid tax. O'Bryant, 49 F.3d at 346; Mildred Cotler Trust v. United States, 184 F.3d 168, 171 (2d Cir. 1999); Stanley, 140 F.3d at 1027-28.; Singleton v. United States, 128 F.3d

833, 837 (4th Cir. 1997); Bilzerian v. United States, 86 F.3d 1067, 1069 (11th Cir. 1996); Clark v. United States, 63 F.3d 83, 87 (1st Cir. 1995); United States v. Wilkes, 946 F.2d 1143, 1152 (5th Cir. 1991). In these cases, the Government wanted to treat the erroneous refunds as unpaid tax. As unpaid tax, the Government could use a broad array of administrative collection measures, such as filing tax liens on property. The Government also had ten years to collect unpaid taxes rather than the two-year statute of limitations imposed on § 7405 actions to recover erroneous refunds. E.g., O'Bryant, 49 F.3d at 342. The cases cited by the Petersons all held that once the taxpayer paid the tax then no tax was due, and the Government could not use administrative means to recover the money. The Government could assert a claim under § 7405 or the Government could reassess the tax. Id., 49 F.3d at 346.

This line of cases only address whether the Government can use administrative procedures to recover erroneous refunds instead of actions under § 7405. The cases do not address whether the Government can use other judicial remedies available to it to recover the money. The Government is not trying to use administrative procedures as a basis for its claim that the July 25, 2006, payment was erroneous. The Government is

asserting that the payment was erroneous because it had a common law right of setoff that it erroneously failed to exercise. Statutory remedies, such as § 7405, generally supplement common law remedies like setoff. The Government can still use the common law remedies. See Cecile Industries, Inc. v. Cheney, 995 F.2d 1052, 1055 (Fed. Cir. 1993). The cases cited by the Petersons do not address whether the Government could have used common law remedies in addition to § 7405. The cases, therefore, do not apply.[3]

The Government argues that it is entitled to summary judgment because it could have withheld the $148,765.00 on July 25, 2006, from the 2002 refund under the doctrine of recoupment. Recoupment is a defense to a claim that arises when the defendant has an offsetting claim against the plaintiff that arises from the same transaction. F.D.I.C. v. Hulsey, 22 F.3d 1472, 1487 (10th Cir. 1994). A recoupment defense abates or reduces the plaintiff's claim since the basis for recoupment arose from the same transaction on which the plaintiff's claim is based. In re Health Management Ltd. Partnership, 336 B.R. 392, 395 (Bankr.C.D.Ill. 2005).

[3]The Petersons also cite a number of IRS internal memoranda to support their position. These memoranda have no precedential value and the Court will not consider them. 26 U.S.C. § 6110(k)(3).

Because the recoupment defense arises out of the same transaction, a defendant can raise the defense even if the offsetting debts are not liquidated and even if the claim on which the recoupment defense is based would otherwise have been barred by the statute of limitations. Reiter v. Cooper, 507 U.S. 258 (1993); In re Coast Grain Co., 317 B.R. 796, 807 (Bankr.E.D.Cal. 2004). The Government argues that the doctrine of recoupment would have allowed it to assert its right to recover the total overpayment from the 1997 refund from the 2002 refund check.

Recoupment, however, does not apply because the Petersons' 1997 tax liability and their 2002 tax liability were not part of a single transaction. The Supreme Court long ago limited the application of the doctrine of recoupment in federal tax cases to circumstances in which the offsetting claims arise out of a single taxable event. Rothensies v. Electric Storage Battery Co., 329 U.S. 296, 299 (1946); accord O'Brien v. United States, 766 F.2d 1038, 1049 (7th Cir. 1985) (Recoupment "may be employed only where 'a single transaction constitute[s] the taxable event claimed upon and the one considered in recoupment.'") (quoting Rothensies, 329 U.S. at 299). Such circumstances arise when the wrong tax is paid or the wrong entity pays the tax. See Bull v. United States, 295 U.S. 247, 261 (1935)

(estate erroneously paid estate tax on funds received by the estate which funds were actually income subject to income tax); Stone v. White, 301 U.S. 532, 539 (1937) (trust paid income tax when beneficiary should have paid the tax).

The Supreme Court rejected efforts to apply the doctrine of recoupment more broadly to offset one tax year's claims against another. The Supreme Court stated that expanding the availability of the doctrine of recoupment in tax cases would frustrate the need for finality:

> It probably would be all but intolerable, at least Congress had regarded it as ill-advised, to have an income tax system under which there never would come a day of final settlement and which required both the taxpayer and the Government to stand ready forever and a day to produce vouchers, prove events, establish values and recall details of all that goes into an income tax contest. Hence a statute of limitation is an almost indispensable element of fairness as well as of practical administration of an income tax policy.

Rothensies, 329 U.S. at 301. In order to promote finality, the Supreme Court limited the doctrine of recoupment to circumstances in which the offsetting claims arise from the same taxable event. Id., at 302-03. Common law setoff does not pose the threat to finality that recoupment does because a party cannot setoff a claim that is barred by the statute of limitations. See In re Holyoke Nursing Home, Inc., 372 F.3d 1, 3 (1st Cir.

2004). In this case, the Petersons' two claims of refunds did not arise from the same taxable event because their 1997 income and their 2002 income were separate taxable events. Recoupment does not apply.

The Government argues that in this case the Petersons' refunds on their 1997 taxes are really part of the same transaction as their claim for refunds on their 2002 taxes because the 1997 refund claim was based on the carry back of net operating losses from 2002. The Supreme Court acknowledged in Rothensies that competing claims from different tax years are often related, "In many, if not most, cases of asserted deficiency the items which occasion it relate to past years closed by statute . . . ." Rothensies, 329 U.S. at 302. Even though such relationships exist, the Supreme Court rejected an expansion of the doctrine of recoupment in tax cases to cover these situations. Allowing recoupment between tax claims arising from different taxable events would seriously impair the need for finality in tax matters. Id. The Government, therefore, had no right to recoup the erroneous 1997 refund payment paid on July 21, 2006, from the 2002 refund paid on July 25, 2006.

The Government finally urges the Court to treat the Petersons' 1997 and 2002 amended tax returns as a single effort to seek a single refund.

Under this theory, the July 21, 2006, check and the July 25, 2006, check were partial payments of a single refund, and, as such, the Government is entitled under § 7405 to recover the entire overpayment from either check. The Government relies on the Seventh Circuit's decision in Pettibone Corp. v. United States, 34 F.3d 536, 539 (7th Cir. 1994), to support this position. The Pettibone case involved a corporate bankruptcy in which the Government conducted an audit of thirteen years of the debtor's tax returns to determine the Government's claim for prepetition taxes. The Government netted overpayments and underpayments from different tax years to determine the proof of claim. Id. at 538. The debtor challenged the Government's practice of netting overpayments and underpayments because the debtor's chapter 11 bankruptcy plan of reorganization prohibited setoffs. Id. at 538. The Seventh Circuit held that in a corporate bankruptcy the Government could treat the full thirteen-year audit period as a single period and net the overpayments and underpayments from different years to determine the final claim in bankruptcy for prepetition taxes. Id. at 539. The Pettibone court, however, specifically limited the decision to corporate tax situations. The court stated that treating separate tax years separately for individuals was more appropriate. Id. The

Government also netted the overpayments and underpayments in Pettibone pursuant to § 6402(a). Id. at 538; 26 U.S.C. § 6402(a). The parties agree that the Government cannot use its authority under § 6402(a) in this case. United States' Response in Opposition to Defendants' Motion for Summary Judgment, at 6-7. The Pettibone case, therefore, does not apply.

The Petersons finally complain that the Government will be allowed to circumvent the statute of limitations if it is allowed to use a failure to exercise a right of setoff on July 25, 2006, as a basis for a § 7405 erroneous refund claim. The Court disagrees. By enacting § 7405, Congress gave the Government two years to fix an erroneous refund. The Government's ability to recover an erroneous refund through other means is governed by other statutes of limitations that may be longer or shorter than two years.[4] Congress decided that the Government should have at least two years. Here, the Government claims it made a mistake on July 25, 2006, when it did not assert its right of setoff to retain the $148,765.00 that it erroneously refunded four days earlier. Issues of fact exist regarding whether the

[4]For example, the Government claims that by the time that it made the erroneous refund on July 21, 2006, it was barred in this case from reassessing the Petersons' 1997 taxes to recover the erroneous refund. United States' Response in Opposition to Defendants' Motion for Summary Judgment, at 9 n.7.

Government in fact had a common law right of setoff on July 25, 2006. It the Government had such a right, it had two years to recover the mistaken payment.

THEREFORE, Plaintiff United States' Motion for Summary Judgment (d/e 13) and Defendants Randal J. Peterson and Valera L. Peterson's Motion for Summary Judgment (d/e 14) are ALLOWED in part and DENIED in part. The Court enters partial summary judgment in favor of the United States and against Randal J. Peterson and Valera L. Peterson in the sum of $50,646.87 representing funds erroneously paid to the Defendants on July 25, 2006. The Court enters partial summary judgment in favor of Randal J. Peterson and Valera L. Peterson and against the United States on the Government's claim to recover the $148,765.00 paid to the Petersons on July 21,2006. The Court denies summary judgment to both parties on the Government's claims that it erroneously paid an additional $148,765.00 to the Defendants on July 25,2006. Issues of fact preclude summary judgment on this portion of the Government's claim. The Court will allow the parties to submit supplemental summary judgment motions with additional evidence to address the unresolved issues.

The Court will set this matter for a telephone status conference on Thursday, October 28, 2010, at 3:45 p.m., to address whether the remaining issues may be resolved by supplemental motions for summary judgment, or whether the matter should be set for trial.

ENTERED this __8th___ day of September, 2010

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE